FRED H. FERRIS,

*vs.*

CHIC-MINT GUM COMPANY, a corporation of the State of Delaware.

In the Matter of the Petition of Wilmington Trust Company for order for payment by Receiver of principal and interest of bond and mortgage out of funds in his hands.

*New Castle, May 23, 1924.*

As between legal liens the first in time is first in right.

Antecedent debt covered by a mortgage is not such a valuable consideration as gives to the mortgagee the character of a purchaser for value.

Under *Revised Statutes U. S.* § 3186 (*U. S. Compiled Statutes* § 5980), a lien for Federal taxes assessed and certified after the date of a mortgage covering same property *held* junior to mortgage whose inferiority was asserted on ground that it was given for antecedent debt.

Under *Revised Statutes U. S.* § 3186 (*U. S. Compiled Statutes* § 5980), a lien for Federal taxes assessed and certified prior to the date of mortgage, but of which no notice was filed with the clerk of District Court, is junior to that of mortgage subsequently executed.

A lien for local taxes and sewer *held* superior to a mortgage lien.

Where it was determined that, as between local tax and sewer liens, a mortgage lien, and Federal tax liens, the three classes were entitled to priority in the order named, the mere fact that some of the Federal tax liens antedated some of the local tax and sewer liens *held* not to entitle them to prior payment to the disadvantage of the mortgage lien.

Federal tax liens, notice of which not filed with clerk of District Court, *held,* under *Revised Statutes U. S.* § 3186 (*U. S. Compiled Statutes* § 5980), junior to judgment liens on same property.

Though general assets of an insolvent corporation are insufficient to pay administration expenses, proceeds of realty to which liens have attached prior to the receivership may not be required to bear a portion of such cost in derogation of prior rights of the lienors.

PETITION FOR PAYMENT of principal and interest of bond and mortgage out of funds in hands of receiver. The petition is filed by Wilmington Trust Company. It represents that it is the holder of a mortgage given to it by the insolvent defendant to secure the

payment of a bond for the real debt of twenty-three thousand dollars. The mortgage is dated and was recorded on September 12, 1922. Interest is due thereon at the rate of six per centum per annum from the date of its execution. The premises upon which the mortgage was a lien were sold by the receiver of the defendant corporation in accordance with the order of this court, free of the lien of the mortgage, the mortgagee consenting thereto and agreeing that its lien might be transferred to the proceeds of the sale. In due time the sale was held and the sum realized therefrom was in round numbers about twenty-eight thousand dollars. The petitioner prays that the principal and interest due on its mortgage may be ordered paid to it prior to all other claims except tax claims due the County of New Castle and the City of Wilmington and a claim held by said city as a sewer lien.

Upon the filing of the petition a rule was directed to be served on all parties disclosed by the claims filed in the cause to be adverse in interest to show cause why the prayer of the petition should not be granted.

A few days before the filing of this petition the receiver had filed a report in which he prayed for allowances and requested instructions concerning the order in which he should make distribution of the funds in his hands. These funds are made up not alone of the proceeds of the sale of the mortgaged premises but as well of moneys derived from other sources not necessary to describe.

In response to the rule, all parties in interest appeared and the argument was such as to raise the entire question of the relative rights of all claimants.

*William S. Hilles*, for the petitioner, Wilmington Trust Company.

*James H. Hughes, Jr.*, U. S. District Attorney, for John W. Herring, Collector of Internal Revenue.

*Frank L. Speakman*, for New Castle County.

*Caleb S. Layton*, City Solicitor, for City of Wilmington.

*Franklin Brockson*, for Wilmington Paper Box Company, a judgment creditor.

*David J. Reinhardt*, for the receiver.

The Chancellor.   Consideration of the rights of the mortgagee has drawn into the discussion the rights of other claimants, and all being before the court pressing their respective demands, directions will be herein given defining the rights and priorities of each.

. No attempt will be made to ascertain the precise sums to be' paid to individual claimants.  The principles by which distribution is to be made will be laid down.   Thereafter an order applying those principles may be submitted for signature.

The following are the claimants:

(1)  The receiver for expenses, allowances and costs of the cause.

(2) The Wilmington Trust Company for its mortgage dated September 12, 1922.

(3)  The United States of America for sundry taxes aggregating  $18,349.41.

(4)  State, County, Wilmington City taxes and sewer lien aggregating  $2,200.00.

(5)  Two judgment creditors, as follows:  One for $290.45 and the other for $211.62.

(6)  General creditors. ·

The funds in hand are insufficient after paying preferred claims to supply anything to the general creditors.   They may therefore be disregarded.

The main controversy concerns the right of the Federal government to be recognized as preferred over the mortgagee and the State, County and City governments.

First.   Is the Federal government to be paid ahead of the mortgagee?  This question, of course, has reference only to that portion of the funds in hand which were derived from a sale of the mortgaged premises.  The taxes claimed by the Federal government are said to constitute a lien prior to the mortgage by virtue of the following provision found in the Revised Statutes of the United States:

"*Section* 3186.  If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector,

except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person; provided, however, that such lien shall not be valid as against any mortgagee, purchaser or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the District Court of the district within which the property subject to such lien is situated." *U. S. Comp. St.* § 5908.

Prior to the Act of March 4, 1913 (*Chapter* 166, *37 U. S. Stat. L.* 1016), the foregoing section did not contain the language beginning with the words "provided, however." That act added this language. Whether its enactment grew out of the decision made by Judge Rose in *United States v. Curry*, (*D. C.*) 201 *Fed.* 371, I do not know. Probably it did. At all events the provision now appears in the Federal Statutes and is applicable to the instant situation. The lien provided for by *Section* 3186 dates from the time "when the assessment list is received by the collector." By "Exhibit 1" filed in the cause by consent of the parties, it appears that of the total amount of Federal taxes here claimed, $3,587.27 thereof appeared on the assessment lists which were received by the collector prior to September 12, 1922, the date of the recordation of the mortgage, and the balance thereof, viz., $14,762.14, was certified and received by the collector subsequent to said date. There was a demand for payment of all the Federal taxes and a neglect or refusal to pay. Therefore the taxes acquired the effect of liens insofar as *Section* 3186 could confer on them that quality.

In arriving at a conclusion with respect to these taxes, as to whether they are preferred over the mortgage, they will be broken into two classes, viz., those assessed and certified to the collector prior to the date of the mortgage and those assessed and certified subsequently thereto. The amount falling in each class has before been stated.

What is the status of those assessed and certified subsequent to the date of the mortgage? It is to be observed that both the lien of the mortgage and the lien for the taxes are legal liens. As between legal liens the general rule universally applied is that the first in time is first in right. The solicitor for the United States endeavors to circumvent this rule by the suggestion that the mort-

gage in this case was given to secure an antecedent debt and this being so the mortgagee is not in the position of a *bona fide* purchaser for value. Wherefore, he concludes that the taxes assessed and certified subsequently to the mortgage are not to be disturbed in their lien by the mortgage notwithstanding its earlier date. This is a *non sequitur*. It is so for two and possibly three reasons. (a) It is founded on the erroneous conception that the equitable doctrine of *bona fide* purchaser for value without notice is applicable to such a situation as this. The case does not call for an amplified discussion of the nature and kind of controversies to which equity applies this favored doctrine. It is sufficient to point out the negative fact that in questions affecting the priority of purely legal estates and demands, equity leaves them where they are, undisturbed by those equitable considerations which give to the situation of a purchaser for value without notice a favored position. 2 *Pomeroy's Equity Jurisprudence*, (4th Ed.) §§ 675, 735. See, also, *Story's Equity Jurisprudence*, (14th Ed.) § 850, where it is indicated that barring the exceptional case of dower the plea of a purchaser for a valuable consideration has been supposed to apply only to equitable claims. In the instant case, there is no appearance of anything like an equitable claim. The rights and claims are purely legal. I am unable, therefore, to see how there is any occasion to invoke the doctrine to which the solicitor for the United States appeals. (b) The statute under which the United States claims its lien expressly declares that the same "shall not be valid as against any mortgagee * * * until notice of such lien shall be filed by the collector in the office of the clerk of the District Court," etc. Notice of these liens was never filed in the office of the clerk of the District Court. Therefore they are not liens as against the mortgagee unless the statute is to be so interpreted as to read into it a qualification confining the term "mortgagee" to that class whose mortgages were obtained to secure a contemporaneous debt, and excluding from its scope that class of whom this mortgagee is one, whose mortgages were obtained to secure an antecedent indebtedness. It is admitted that the term "mortgagee" is broad enough in its literal meaning to embrace the petitioner in this case. Nothing has been adduced here which would justify the court in going over into the field of unrelated equitable

doctrines to borrow an idea as justification for writing into the language of the act something by way of exception which the Congress itself saw fit to omit. If the language of the act in terms makes the tax lien invalid as against the petitioner, and if it is not permissible by way of judicial amendment to except the petitioner's situation from its benefit, then the doctrine of *bona fide* purchaser for value to which appeal is made, has no pertinency. (c) The third possible reason for the *non sequitur* mentioned above is based on the assumption that the doctrine in question is applicable as between the Federal government and the mortgagee. On this assumption it may very well be doubtful whether that doctrine in its proper application would deprive the petitioner of its priority. It is well settled that an antecedent debt does not constitute such a valuable consideration as gives to a mortgagee the character of a purchaser for value within the meaning of the rule. The reason for this is that such a mortgagee "parts with no value, surrenders no right and places himself in no worse legal position than before." 2 *Pomeroy's Equity Jurisprudence*, (4th Ed.) § 749.

Now in this case, the agreement between the parties at the time the money was loaned was that the borrower would when called upon execute a bond and mortgage to cover the loan. If the agreement to execute a mortgage led the mortgagee to part with value, as it did, may not the mortgage which was but a carrying out of that agreement acquire its character therefrom? If this question be answered in the affirmative, then the rationale of the doctrine which condemns an antecedent debt as not constituting a valuable consideration finds no pertinent facts upon which to fasten itself in the instant case. Against this line of thought there is of course the suggestion with which Prof. Pomeroy appears to attack the rule that satisfaction of an antecedent debt, though evidenced by parol testimony, is in some jurisdictions held to constitute a valuable consideration, viz., that the door is opened for the easy admission of fraud. 2 *Pomeroy's Equity Jurisprudence*, (4th Ed.) § 749. What might be the correct position to assume with respect to this aspect of the question, I do not assume to say.

There is, however, another consideration which, if the equitable doctrine of an innocent purchaser for value is to be read into

*Section* 3186, would appear to make this case an improper one for its application. As a premise to this consideration, it should be stated that:

> "The peculiar theory upon which equity acts towards a *bona fide* purchaser seems of necessity to imply that he should be a defendant. There are a few special circumstances, however, in which the theory, consistently followed out, requires that he should be aided by affirmative relief. When these circumstances are carefully examined, it will be found that the fraud, or what equity regards as fraud, of the party holding the prior title or interest, and against whom the affirmative relief is granted, is usually, if not always, the ground upon which the court interposes on behalf of the subsequent *bona fide* purchaser." 2 *Pomeroy's Equity Jurisprudence (4th Ed.)* § 779.

The illustrations which are given by Prof. Pomeroy in the sections following the quoted one show that the reason underlying the class of cases referred to consists in this, that the prior claimant has by a course of fraudulent conduct misled the other to his injury. Now the instant case, if it falls at all into the analogies to which the doctrine of an innocent purchaser for value is applicable, belongs to the class of cases above referred to by Prof. Pomeroy, for the case here is between two purely legal claimants, one of whom, the government, seeks to elevate its junior claim above the other on some supposed right arising out of the fact that the claim of the latter is degraded because of its being founded upon a lack of valuable consideration. While this is not the precise situation in the class of cases referred to, yet those cases supply the nearest analogy in equity to the situation here presented. But the petitioner, the one prior in point of legal right, by taking the mortgage can in no sense be said to have deceived the Federal government, or to have induced it to act to its prejudice. The government's claim being for taxes automatically arose. It was in no wise induced or procured to be incurred by the prior mortgagee. This being so, what ground can there be for the government to contend that there is occasion for equity to accord to it the favored position of one who has become an innocent purchaser for value? In this aspect of the matter, more clearly than in the other, it would appear that there is an absence of the reason on which equity predicates its position towards one whose consideration rests on an antecedent debt.

The conclusion on this branch of the case is that as to the taxes assessed and certified since September 12, 1922, the date of the mortgage, the claim of the United States is junior to that of the mortgagee.

What is the status of those Federal taxes assessed and certified prior to the date of the mortgage? If they are to be preferred over the mortgage, it must be because the word "mortgagee" appearing in *Section* 3086 is to have its meaning cut down by interpretation in the manner before suggested. I have already indicated that this cannot be done.

It follows, therefore, that with respect to the funds derived from the sale of the mortgaged real estate, the Federal government has by statute subordinated itself to a position junior to that of the mortgagee. The order to be entered will accord with this finding.

Second. With respect to State, County and City taxes and sewer liens, it is conceded that the law of this State places them ahead of local liens on the real estate. In view of this concession an examination of the law with respect to its correctness is obviated. These liens are, therefore, to be ranked ahead of the mortgage.

In point of time some of the liens for Federal taxes in turn antedate some of the local tax and sewer liens. Must then the Federal tax liens which precede in point of time be paid before the State, County, and City liens are paid? As appears hereinafter, the judgment claims rank above the Federal tax claim. The amounts due on the mortgage, principal and interest, and on the judgment claims and claims of the State, County and City liens are in excess of the proceeds derived from the sale of the real estate. Inasmuch as the local tax and sewer liens must be paid in full before the mortgagee can receive anything, it is apparent that if Federal taxes are paid ahead of the local tax and sewer liens, the outcome will be that the mortgage will bear a burden of abatement. In substance this means that the mortgage is *pro tanto* subordinate to the Federal claim, a result which for the reasons before given is not tenable. Here we have three claimants, each claiming certain preferences. The first (the State, County and City) admittedly outranks the second (the mortgagee) and we have

seen that the second outranks the third (the United States).   Yet
it is contended that the third is to be preferred to the first and
thus displace the second from a position of preference over the third.
If this contention be accepted then indeed will the last be declared
to be first.  When the government agreed by *Section* 3186 to take
rank after the mortgagee, it must necessarily follow that it is
subordinate in rank to those who are superior to its immediate
senior.

This conclusion is applicable to the peculiar facts of this case.
Because of the fact that the proceeds from the sale of the real
estate are insufficient to take care of all liens, it has not been neces-
sary to examine the general question of the relative rights of Fed-
eral and State governments in asserting their respective claims for
taxes. The early case of *U. S. v. Nicholls,* 4 *Yeates (Pa.)* 251, ap-
pears to be the only one where the question of superiority be-
tween the dual sovereignties found in our system of government
has been considered in its application to rival claims for payment
out of the same fund.   The insufficiency of assets in this case to
supply a fund over which controversy might arise, due to the pecul-
iar provision of *Section* 3186 of the *Federal Revised Statutes,* makes
it unnecessary for me to venture into that portion of the field of
constitutional law which the case from 4 *Yeates* touches.

Third,  As between the claim of the Federal government for
taxes and the claims of judgment creditors having liens, the posi-
tion of the latter is similar to that of the mortgagee.   The pro-
viso in *Section* 3186 of the *United States Revised Statutes* saves
them from the force of its general provision.

Fourth.   As to costs, expenses and allowances to the receiver.
With respect to these, the solicitor for the United States concedes
them to constitute a prior charge.  The mortgagee, I believe, has
not entered into this concession.  But in view of some understand-
ing entered into at the time the mortgaged premises were sold free
from liens, the matter of costs, etc., is not mooted between the
receiver and the mortgagee.  It is contended on behalf of the judg-
ment creditors, however, who do not enter into the concession
referred to, that the costs, expenses and allowances to the receiver
should  be paid out of the personal estate and not from the pro-
ceeds of the real estate.  The contention is made and left with the

court without argument. It calls for a determination of the question whether, where general assets are insufficient to pay costs and administration expenses of an insolvent corporation, proceeds derived from the sale of the real estate to which liens have attached prior to the receivership may be required to bear a portion of such costs, etc., in derogation of the prior rights of the lienors. Without reviewing the facts pertinent for consideration in disposing of the question thus made, it is unnecessary to say anything more than this, that the cases of *Walter v. Peninsula Cut Stone Co.,* 9 *Del. Ch.* 374, 82 *Atl.* 961, and *Central Trust, etc., Co. v. Chester County Electric Co.,* 9 *Del. Ch.* 247, 80 *Atl.* 801, appear to supply a negative answer to this question. Unless, therefore, the receiver cares to be heard further on this aspect of the case, the order will be so drawn that the proceeds from the sale of the real estate are exonerated from the burden of all costs, expenses and allowances as against not only the mortgagee but also as against the judgment creditors.

No exceptions having been filed to the amount of the allowances asked for by the receiver, the same will be approved. It is to be regretted, however, that the financial condition of the estate is such that the allowances asked for and approved cannot be paid in full.

If the foregoing fails in any particular to serve as a guide for drafting an order allocating the funds in hand to the parties respectively entitled thereto, a further hearing will be accorded