[No. 20857.  *En Banc.*  March 20, 1928.]

EXCHANGE NATIONAL BANK OF SPOKANE *et al., Respondents*, v. UNITED STATES, *Appellant.*[1]

[1] TAXATION (106-1)—LIEN AND PRIORITY—BETWEEN FEDERAL AND STATE TAXES.  The lien of the United States for Federal taxes has priority over the lien for state taxes, and in event there are not enough assets of an insolvent corporation to satisfy both claims, that of the United States is entitled to be first paid in full, in view of U. S. Rev. St., § 3466, providing "the debts" of the insolvent due to the United States shall be first satisfied; and § 3186 giving the United States a lien therefor (TOLMAN, and HOLCOMB, JJ., dissent).

[2] SAME (106-1).  Such sections cannot be held inapplicable as against the sovereign states, because the states were not expressly named in the acts; nor as to Federal income taxes, because the income tax law expressly excepts certain classes of creditors whose rights are subject and inferior to the rights of the state for the enforcement of taxes.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered May 26, 1927, upon findings in favor of the plaintiffs, in an action to determine the priority of tax liens.  Reversed.

*Roy C. Fox, A. W. Gregg,* and *A. J. Ward,* for appellant.

*Danson, Lowe* and *Danson,* for defendant Culton-Moylan-Reilly Auto Co.

*Chas. W. Greenough, A. O. Colburn,* and *Ferd. J. Schaaf,* for respondents.

ASKREN, J.—The Culton-Moylan-Reilly Auto Company, an insolvent corporation, was placed in the hands of a receiver appointed by the state court in an action brought against it by the Exchange National Bank of Spokane.  The United States has a claim against the corporation for income taxes for the years 1917, 1918

[1]Reported in 265 Pac. 722.

and 1919, which were assessed on February 28, 1923, and for the year 1920, assessed on May 2, 1923. Spokane county has a claim for personal property taxes for the years 1921 and 1922, assessed March 1, of those years, and for 1923 and 1924, assessed September 3, of each year. Whitman county claims a like tax against the corporation for the years 1921 and 1922 assessed March 1, each year. The receiver converted the assets into cash for distribution to the creditors.

A dispute arose as to whether the state or Federal tax was paramount, there being insufficient funds in the hands of the receiver to pay both claimants in full. Upon a hearing, the trial court ruled that the state tax was entitled to be satisfied first, and the United States has appealed.

[1] The precise question, so far as we know, has never before been presented either to this court or to the United States supreme court, although it has been before three Federal district courts. Under the statutes of the United States the estate of an insolvent debtor is liable first for the debts due the United States. Section 3466 of United States Revised Statutes reads as follows:

"Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, *the debts due to the United States shall be first satisfied;* and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."
[Italics ours]

Section 3467 makes every executor, administrator or assignee of an estate personally liable to the United States if he pays any other debt before paying the debt of the United States.

Section 3186, Revised Statutes, as amended by ch. 344, 43 U. S. Stat. at Large 994, so far as pertinent to this controversy, is as follows:

"Sec. 3186. That if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person: *Provided, however,* that such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the district court of the district within which the property subject to such lien is situated. . . ."

The first quoted section (§ 3466) has been construed by the Federal courts and the words "debts due the United States" have been held to include taxes due it. *Price v. United States,* 269 U. S. 492; *Stripe v. United States,* 269 U. S. 503.

We have thus before us for consideration a Federal statute that specifically by its terms declares that, where the funds of an insolvent are insufficient to pay all the debts due from it, "the debts (taxes) due the United States shall be first satisfied,"—words clear and definite enough to support the claim of the United States in this proceeding unless we are to hold that the Federal government has no power to make its claims for taxes prior to those of the states, or because the state, a sovereign power, is not specifically named in that section or in § 3186.

Before proceeding to the arguments advanced in support of these propositions it may be well to refer to four cases in which the question here at issue has been presented.

The first case involving this question seems to be *United States v. Eggleston,* Fed. Cas. No. 15,027. In that case the Federal district court held that state taxes were not a "debt due from the deceased" but were a charge laid by the state upon the property of the deceased. The point is not argued at length nor is any authority cited in support thereof. The case appears not to have been followed by any other United States court, and is contrary to later decisions by them. The argument that "debts due from the deceased" does not include the taxes due the state seems erroneous in view of the holdings in *Price v. United States,* and *Stripe v. United States, supra,* that the words "debts due the United States" include taxes due the United States. There is nothing in the context of the sentence to indicate that the word "debts" means one thing when applied to the deceased and another when applied to the government.

In *United States v. San Juan County,* 280 Fed. 120, the defendant county claimed that its tax was a prior lien to that of the United States. The decision written by the district judge holds that the debt due the United States must be first paid, saying:

"The power of taxation is an indispensable incident to sovereignty and by the provisions of the constitution and laws a grant in favor of the United States is paramount in the event of insolvency of the debtor."

The decision quotes Chief Justice Marshall in the case of *United States v. Fisher,* 6 U. S. 358, 2 Law Ed. 304, as follows:

"This claim of priority on the part of the United States will, it has been said, interfere with the right

of the state sovereignties respecting the dignity of debts, and will defeat the measures they have a right to adopt to secure themselves against delinquencies on the part of their own revenue officers. But this is an objection to the constitution itself. The mischief suggested, so far as it can really happen, is the necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of Congress extends.''

The United States district court of Pennsylvania arrived at the same conclusion in *Stover v. Scotch Hills Coal Co.*, 4 Fed. (2d) 748. In that action, the state tax was sought to be made prior to the lien of the United States. The court held that the lien of the United States was paramount even though ''under the state laws the state tax became a lien before the Federal tax accrued.'' Said the court:

''The commonwealth of Pennsylvania's claim to priority here rests upon the exercise of its own sovereign power by its own act of assembly, and that of the United States also rests on the sovereign powers of the federal government by act of Congress. The two claims here conflict, and in such a case priority must be awarded, both under the Constitution of the United States and that of Pennsylvania, to the United States. The most recent case which establishes this principle is that of *United States v. San Juan County* (D. C.) 280 Fed. 120, which fully supports the views we have here expressed.''

The other decision apparently involving this question was presented to the court of chancery of Deleware in *Ferris v. Chic-Mint Gum Co.*, 14 Del. Ch. 232, 124 Atl. 577. In that case there were many claimants, including a mortgagee, state, county and city taxes and United States taxes. The chancellor found that the mortgagee's rights were superior to the Federal government's tax under § 3186, *supra*, which excepts under certain provisions mortgagees, purchasers or judgment

creditors. In referring to the priorities under the United States statute which make the mortgagee's rights superior to the Federal tax, the court said:

"Inasmuch as the local tax and sewer liens must be paid in full before the mortgagee can receive anything, it is apparent that if federal taxes are paid ahead of the local tax and sewer liens, the outcome will be that the mortgage will bear a burden of abatement. In substance this means that the mortgage is *pro tanto* subordinate to the federal claim, a result which for reasons before given is not tenable. Here we have three claimants, each claiming certain preferences. The first (the state, county and city) admittedly outranks the second (the mortgagee) and we have seen that the second outranks the third (the United States). Yet it is contended that the third is to be preferred to the first and thus displace the second from a position of preference over the third. If this contention be accepted then indeed will the last be declared to be first. When the government agreed by section 3186 to take rank after the mortgagee, it must necessarily follow that it is subordinate in rank to those who are superior to its immediate senior.

"This conclusion is applicable to the peculiar facts of this case. Because of the fact that the proceeds from the sale of the real estate are insufficient to take care of all liens, it has not been necessary to examine the general question of the relative rights of federal and state governments in asserting their respective claims for taxes. The early case of *United States v. Nicholls,* 4 Yeates (Pa.) 251, appears to be the only one where the question of superiority between the dual sovereignties found in our system of government has been considered in its application to rival claims for payment out of the same fund. The insufficiency of assets in this case to supply a fund over which controversy might arise, due to the peculiar provisions of section 3186 of the Federal Revised Statutes, makes it unnecessary for me to venture into that portion of the field of constitutional law which the case from 4 Yeates touches."

It is apparent from the latter part of the quotation that the court based its conclusions upon the peculiar situation resulting from the claim of the mortgagee and refused to determine the relative rights of the state and Federal government.  There are no rights of third parties involved in this proceeding that require us to enter into a discussion of the question determined there, and which might arise under our own statutes, which make state taxes a superior lien to all others. It is not for the state to assert that because the United States has exempted the mortgagee, purchaser and judgment creditor, and its own statutes make its tax superior to those exempted by the United States that its tax has thereby become superior to the United States tax.

It is true that each sovereign is supreme in its own sphere, as argued by respondent, but we think that the cases cited in support of the proposition go no further than to hold that each sovereign, so far as concerns its own rights, has the power to make its own laws for their effectual enforcement untrammelled by the other.

Out of the mass of authority presented to us, we find no case holding that, where each has the power to tax and that power has been exercised and the result has been such as to cause a square conflict as to which shall prevail, the power of the state is supreme.  Such a holding would be contrary to the constitution of the United States, which declares the Constitution of the United States and laws made in pursuance thereof to be "the supreme law of the land, in every state, and the judges shall be bound thereby."  When the state granted to the federal government the power to levy taxes it thereby gave up the right to maintain that its taxes should be superior to those of the Federal government if Congress by appropriate legislation declare

their supremacy. The logic of this reasoning is supported by the decision of the United States supreme court in *United States v. Snyder,* 149 U. S. 210, where the court said:

"The grant of the power and its limitations are wholly inconsistent with the proposition that the state can, by legislation, interfere with the assessment of federal taxes."

While the precise question there presented was whether the state could lawfully require by statute that the Federal tax should be filed or inscribed in the mortgage office of the parish of New Orleans, the ground of the decision leaves no doubt that the right of the government to assess and collect its taxes cannot be thwarted either by a state statute limiting its rights or by the state collecting its own tax ahead of the government.

Respondent has laid much stress upon the decision of the United States supreme court in *Lane County v. Oregon,* 74 U. S. 71, 19 Law Ed. 101, and we think it well to briefly refer to that opinion. That case arose upon the failure of Lane county to pay to the state of Oregon a certain sum of money due as state revenue in *gold and silver coin* as required by state statute. The county proffered payment in other lawful money of the United States which, under an act of Congress, was declared to be "legal tender in payment of all debts public and private within the United States." The court held that it was not the intention of Congress to legislate upon what was legal tender in the payment of state taxes inasmuch as that was a matter of purely state legislation. In the course of the opinion, the court made a general observation which has been seized upon by respondent as indicating the view of the court that the state is entitled to collect its taxes

even though the government fail.  This observation is as follows:

"The people of the United States constitute one nation, under one government, and this government within the scope of the powers with which it is invested, is supreme.  On the other hand, the people of each state compose a state, having its own government, and endowed with all the functions essential to separate and independent existence.  The states disunited might continue to exist.  Without the states in union there could be no such political body as the United States.

"Both the states and the United States existed before the Constitution.  The people, through that instrument, established a more perfect union by substituting a National Government, acting, with ample power, directly upon the citizens, instead of a Confederate Government, which acted with powers, greatly restricted, only upon the states.  But in many articles of the Constitution the necessary existence of the states, and, within their proper spheres, the independent authority of the states, is distinctly recognized.  .  .  .  Now, to the existence of the states, themselves, necessary to the existence of the United States, the power of taxation is indispensable.  It is an essential function of government.  It was exercised by the Colonies; and when the Colonies became states, both before and after the formation of the Confederation, it was expressed by the new governments."

This might appear to be an argument in favor of respondent's contention, when separated from the facts in the case and the context of the opinion.  But it is clearly apparent that the court was no more than declaring the fundamental proposition, which it was later in the opinion to declare a controlling reason for the result reached, that each sovereign should be left to its own devices in determining how, when and where its own taxes should be paid, but in no wise using the argument as proof that either was superior to the other in

a conflict between the two.  This is shown by the later observation in which the question of conflict is referred to and the supremacy of the Federal government established, in these words:

"In respect, however, to property, business and persons within their respective limits, their power of taxation remained and remains entire.  *It is, indeed, a concurrent power, and in the case of a tax on the same subject by both governments, the claim of the United States as the supreme authority, must be preferred;* but with this qualification it is absolute.  The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the states commit the exercise of the power.  That discretion is restrained only by the will of the people expressed in the state constitutions or through elections, and by the condition that it must not be so used as to burden or embarrass the operations of the National Government.  There is nothing in the constitution which contemplates or authorizes any direct abridgement of this power by national legislation."  [Italics ours]

[2]  We now turn to the contention that, since the state is not named in §§ 3186 or 3466, those sections will not be construed as binding upon the state.  The argument is two-fold: First, it is said that a familiar rule of construction requires us to hold that, whenever a sovereign is not named in a statute, it is not bound by the act if it tends to restrain or diminish its rights or powers, unless it be one passed for the public good, such as the advancement of religion and justice, or to prevent injury or wrong.  *Dollar Savings Bank v. United States,* 86 U. S. 227, 22 Law Ed. 80; *United States v. Herron,* 87 U. S. 251, 22 Law Ed. 273.

In the cases cited the rule has not been applied between two sovereigns of the character we have here.  It was frequently applied in England where an act of

Parliament would, if construed strictly, abridge the rights or privileges of the King. In this country it has been applied in those cases where a sovereign's rights have been claimed to be abridged under a statute passed by its own legislative body. Here we have two sovereigns with one holding the right to prevail in case of conflict. We think it would unduly extend the rule to hold that the state must be specifically named therein to come under its provisions.

The other branch of the argument is that Congress having exempted, under certain provisions, judgment creditors, purchasers and mortgagees, all of whom are inferior to a state's tax lien under state law, it seems inconceivable that Congress would have preferred them to a state tax, a lien of a sovereign power. There is much force to this argument. It would seem that there would be far greater reason for excepting a state tax lien than the others enumerated in § 3186, *supra,* but of course our duty is not to determine what liens Congress should have excepted, but to determine what it has, for, enjoying the power to except those which it desires, its choice must stand unassailed when coupled with the right to make it. To construe a further exception into the statute (§ 3186) is to legislate judicially— an abhorrent thing—while to hold that every debt is not made junior to debts due the United States under § 3466, *supra,* is to do violence to statutory construction.

The judgment is reversed with instructions to grant priority to the Federal tax over the state tax.

FRENCH, FULLERTON, MAIN and MITCHELL, JJ., concur.

PARKER, J. (concurring)—I concur in the result reached in the foregoing majority opinion solely upon the ground that this tax debt due to the United States,

viewed apart from any supporting lien right, has priority over this tax debt due the state of Washington, viewed apart from any supporting lien right. It seems clear to me that each of these two tax debts primarily came into existence by the levy of a tax *in personam*, and not by the levy of a tax *in rem*. I think a critical reading of the revenue legislation of the respective sovereignties, the United States and the state, and the record in this case showing the manner of the levying of these respective taxes, will render this plain. The revenue legislation of each has prescribed procedure by which its *personam* tax debts may be made specific liens upon property of one personally owing such tax debt. This record, I think, warrants the conclusion that neither the United States, the state of Washington, nor Spokane county for the state of Washington, has ever, by the prescribed statutory procedure, perfected its inchoate tax lien right against any of the property of which the funds here in question are the proceeds. I, therefore, view these respective tax debts wholly apart from any supporting lien right. Thus, I think the question of which shall be "first satisfied" out of these funds is determinable by the language of § 3466, United States Revised Statutes, quoted in the majority opinion, and hence must be determinable in favor of the United States.

I confine my concurrence in the majority opinion to this ground, because I am not ready to yield assent to the view that a United States income tax legally becomes a lien upon any property of the person against whom it is levied until evidence thereof is filed as prescribed by § 3186, quoted in the majority opinion, as against lien rights which are *superior* to those of "any mortgagee, purchaser or judgment creditor." I am, as at present advised, in accord with the views expressed by the learned chancellor in *Ferris v. Chic-Mint Gum*

*Co.,* 14 Del. Ch. 232, 124 Atl. 577. I fear that the majority opinion of my brethren may be considered as wedding us to a contrary view. At all events, it seems to me unnecessary to so commit ourselves in the disposition of this case.

TOLMAN, J. (dissenting)—The question here to be decided is whether or not a state tax is exempt from the operation of §§ 3466 and 3186, Revised Statutes of the United States. It seems to me that it is.

The states existed before the United States. They created the Union, and by express constitutional provision that Union has only such powers as are expressly delegated to it or are necessary to carry into effect the delegated powers. All other governmental powers are expressly reserved to the states.

The Federal income tax is levied by authority of the constitutional amendment of 1913, which permits Congress to lay and collect taxes on incomes from whatever source derived, without apportionment among the several states. The record before us is silent upon the question of the source of the money now in the hands of the receiver. It is apparent, however, that the county tax was a lien on the specific property assessed as of the date of the assessment, while the Federal tax was a lien upon the income only. The income which the Federal government taxed has been dissipated and is gone. The money in the hands of the receiver stands in lieu of the specific property assessed, and the lien of the county tax has extended to it. Clearly, the Federal government had no power to levy a tax, directly or indirectly, on the money or property of the Culton-Moylan-Reilly Company as such; but the state or county has that right and had it at all times. Can the state's right, which had thus accrued, be displaced and superseded by the attempt of the Federal government

to convert its claim against the income to one against the property? Where there is a conflict between two sovereigns as to such a right as this, ought not each to be restricted to the thing taxed? In other words, the Federal government ought to have the first claim against the income, and the state the first claim against the property or its proceeds. If the income which the government taxes were still in existence, but the property had been dissipated, the government would no doubt contend that its tax on that income should be first paid, although the state could convert its claim under our laws to one against the income. And if that is a proper rule, why should it not work both ways? If Congress can enact a law making its tax a first claim against the property of an insolvent corporation, then it has power to make its tax a first claim against all property of solvent persons and corporations, and thereby take from the state its power to exist.

As I read the cases, the reasoning of the Federal Supreme court is contrary to the view of the majority. *Ex parte Tyler,* 149 U. S. 164, 37 Law. Ed. 689; *Lane County v. Oregon,* 74 U. S. 71, 19 Law. Ed. 101; *Buffington v. Day,* 11 Wall. (U. S.) 113, 20 Law. Ed. 122; *McCulloch v. Maryland,* 17 U. S. 316, 4 Law. Ed. 579.

Nor am I satisfied that the majority has correctly construed the Federal statutes involved. I cannot conceive of a state tax, which was a lien long before the Federal tax was assessed, being disregarded and held of less moment than the interest of a mortgagee, purchaser or judgment creditor.

I therefore dissent.

HOLCOMB, J., concurs with TOLMAN, J.