The issue here is between the United States and the town of Irvington, each claiming a priority on funds in the hands of the receiver of the defendant corporation. The funds in question represent the proceeds of a sale of personal property of the corporation and for the purposes of this decision are considered as the property itself.
The claim of the United States is based upon income taxes assessed in 1927 and 1928; that of the town of Irvington arises out of personal property taxes assessed for the years 1931, 1932 and 1933. The receiver was appointed on August 29th, 1933.
The United States relies upon section 191 of paragraph 3466 of the Revised Statutes (31 U.S.C.A. 75 § 191), which provides that: *Page 178 
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."
The word "debts" as used in this section includes taxes.Price v. United States, 269 U.S. 492.
The controversy between the United States and state governments and subdivisions thereof as to priority of claims against insolvent debtors arose early in the history of the nation. The present statutory provision is in substantially the same form as paragraph 5 of an act entitled "An act to provide more effectually for the settlement of accounts between the United States and receivers of public money," enacted March 3d 1797, chapter 20. 1 Stat. at L. 515. The priority of the United States as against the claims of the states was first upheld by the United States supreme court in United States v. Fisher,6 U.S. 358; 2 L.Ed. 304, decided in 1805. The priority thus secured to the United States has been firmly settled as a result of many subsequent decisions. Field v. United States,34 U.S. 182; Lane County v. Oregon, 74 U.S. 71; Price v. UnitedStates, supra; County of Spokane v. United States, 279 U.S. 80;New York v. Maclay, 288 U.S. 290; United States v. San JuanCounty, 280 Fed. Rep. 120; Stover v. Scotch Hills Coal Co.,4 Fed. Rep. 2d 748. It cannot be impaired or superseded by state law. The priority rights of claimants are to be determined as of the date of the act of bankruptcy — in this case as of the date of the appointment of the receiver. County of Spokane v.United States, supra; United States v. Oklahoma,261 U.S. 253. In the Spokane County Case the county tax was not a perfected lien upon the property of the insolvent corporation at the date of the receivership. Whether or not a different result would have been reached if such a lien had been proved was not indicated. *Page 179 
In the instant case, the personal property taxes due the town of Irvington constituted a lien upon the property itself when the assessment was made (Chase Brass and Copper Co. v. BartReflector Co., Inc., 111 N.J. Eq. 59; Pasquariello v. ArenaTwine and Cordage Co., 108 N.J. Eq. 491; Spark v. La ReineHotel Corp., 112 N.J. Eq. 398), while the income tax due the United States had not then been reduced to a specific lien. But it is not upon the theory of lien that the priority rights are claimed on behalf of the United States. The statute does not create a lien, but a preference, upon the distribution of the proceeds of an insolvent debtor's property among his creditors, for "debts" due to the United States, whether or not those debts have been reduced to liens upon specific property. Beaston v.Farmers' Bank, 37 U.S. 102; United States v. Oklahoma, supra;Bramwell v. United States Fidelity and Guaranty Co.,269 U.S. 483. The precise issue here involved appears seldom to have been passed upon. In the early case of United States v. Nicholls
(Pa., 1805), 4 Yeates 251, it was held that a lien of the United States for a debt due it took no priority over a pre-existing right of lien of any state. Writ of error was dismissed by the United States supreme court (17 U.S. 311) but solely because of a deficient record. Chief-Justice Marshall said:
"It would have been sufficient to give this court jurisdiction of the cause, that the record should show that an act of congress was applicable to the case. That is not shown by this record. The act of congress which is supposed to have been disregarded, andwhich, probably, was disregarded by the state court, is that which gives the United States priority in cases of insolvency. Had the fact of insolvency appeared upon the record, that would have enabled this court to revise the judgment of the supreme court of Pennsylvania." (Italics mine.)
The question was noted, but not decided, in Ferris v.Chic-Mint Gum Co., 14 Del. Ch. 232; 124 Atl. Rep. 577. InUnited States v. San Juan County, supra, and in Stover v.Scotch Hills Coal Co., supra, corporate taxes of the United States were held entitled to priority over state taxes. In *Page 180 
the latter case it was also held that this right of priority was not affected by the fact that the tax claims of the state became first liens at a time prior to the accruing of the tax claim of the United States.
There is no longer any doubt as to the power of the congress to give priority to debts due to the United States, though the debts thereby subordinated are due to a state or one of its subdivisions. When the several states granted to the federal government the power to levy taxes, they surrendered any right to maintain that their taxes should be equal or paramount to those of the federal government in the face of legislation by congress to the contrary. Exchange National Bank v. United States,147 Wn. 176; 62 A.L.R. 139.
The statute extends the priority to three classes of cases, first, those in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment of his assets; second, those in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law; and third, those in which an act of bankruptcy is committed. Mere inability to pay all debts in the ordinary course of business is not insolvency within the meaning of the act. The "insolvency" referred to in section 3466 must be demonstrated in one of the three modes stated. In other words, these are not simply illustrations of the general insolvency spoken of, but are definite limitations of the situation under which the priority arises. Beaston v. Farmers' Bank, supra; United States v.Oklahoma, supra. The word "insolvent" as used in this section means only that insolvency contemplated by the Bankruptcy act, as distinguished from technical, or common law, insolvency. UnitedStates v. Fisher, supra; United States v. Oklahoma, supra.
It is clear that in this instance there was no voluntary assignment and there was no attachment of the assets of an absconding, concealed or absent debtor. The sole question remaining to be determined, therefore, is whether an act of bankruptcy has been committed.
It is provided by paragraph (a) clause 5 of section 3 of *Page 181 
the Bankruptcy act as amended May 27th, 1926 (11 U.S.C.A. §21), that an act of bankruptcy is committed by a person when, while insolvent, a receiver or trustee has been appointed, or put in charge of his property. The 1903 act had used, in place of "while insolvent" the words "because of insolvency." Under the earlier provision it was generally held that the appointment of a receiver did not of itself constitute an act of bankruptcy; and some authorities held that in order to constitute the appointment of a receiver on the petition of third persons an act of bankruptcy the ground for the appointment must have been the insolvency of the debtor. 11 U.S.C.A. § 21, notes 113 and 114, and cases cited therein.
The later cases, however, consider the act of bankruptcy established by proof that the debtor was in fact insolvent within the meaning of the Bankruptcy act, even though the pleadings did not allege such insolvency. Davis v. Michigan Trust Co.,2 Fed. Rep. 2d 194; In re Bucyrus Road Machinery Co.,10 Fed. Rep. 2d 333. Prior to 1903 the appointment of a receiver of an insolvent was not of itself an act of bankruptcy, and this was so whether the appointment was made upon the application of the insolvent or upon the application of creditors. Zugalla v.International Mercantile Agency, 142 Fed. Rep. 927. The construction of the earlier cases seems to have been entirely too narrow, for its effect was to nullify the 1903 amendment. This for the reason that it is usually unnecessary and uncommon, in a creditor's bill, to allege more than insolvency in the technical sense, i.e., inability to meet maturing obligations in the ordinary course of business.
The bill in this case alleges, not actual, but technical insolvency — that the defendant corporation is unable to pay its liabilities as they mature and become payable. However, it cannot be doubted that the corporation was at that time insolvent in the bankrupt sense. The receiver's account shows total receipts of $1,659.50 against claims filed and allowed amounting to $83,787.34. "It is established that, when a court of equity takes into its possession the assets of an insolvent corporation, it will administer them on the theory *Page 182 
that in equity they belong to the creditors and shareholders rather than to the corporation itself. Here, the fund being less than the debts, the creditors are entitled to have all of it distributed among them according to their rights and priorities."United States v. Butterworth-Judson Corp., 269 U.S. 504, 513.
The sounder interpretation of the definition of an act of bankruptcy under the 1903 amendment, as well as the plain language of the 1926 amendment, compels the determination that an act of bankruptcy was committed in this instance. The 1926 amendment merely requires that the debtor be, in fact, insolvent when the receiver is appointed. United States v. Singac TrustCo., 112 N.J. Eq. 448 is not apposite.
A preference will be decreed in favor of the United States.