IN RE RECEIVERSHIP OF MITCHELL'S RESTAURANT, INC.

*New Castle, June 28, 1949.*

*Frank L. Speakman,* for Delaware Unemployment Compensation Commission.

*Daniel L. Herrmann,* Assistant United States District Attorney, for the United States.

HARRINGTON, Chancellor: The insolvency of the corporation was alleged in the bill and admitted in the answer, and on December 12, 1947, the receiver was appointed on that ground.[1]

Mitchell's Restaurant, Inc. was engaged in the retail liquor business in the City of Wilmington, and its personal property which came into the hands of the receiver was appraised as follows:

| "Furniture and equipment | $1821.30 |
|---|---|
| Alcoholic liquors | 312.02 |
| Soft drinks | 51.25 |
| Total | $2184.57" |

The corporation had no real property. The furniture and equipment owned by it included a Walk-in refrigerator appraised at $800, which was purchased on a conditional sales contract, and was returned to the conditional vendor by order of this court.

Other furniture and equipment, appraised at $643.70, was subject to a chattel mortgage for $500.00, dated November 26, 1946, held by the Central National Bank of Wilmington. The residue of such property not subject to any liens was appraised at $740.87.

[1] After the appointment of the receiver, it was discovered that, through some oversight, the corporate charter had not been filed in the office of the Secretary of State and recorded according to law, but Mitchell's Restaurant, Inc., having operated as a corporate entity, was held to be a *de facto* corporation, for which a receiver could be appointed.

In an effort to find a purchaser for the corporate assets, the receiver was authorized to operate the business for a short period. An offer of $3500 was made for all of the property of the corporation except the fixtures covered by the chattel mortgage, or, in the alternative, an offer of $4,000 for all of such property, clear of liens. The receiver found that he could settle the chattel mortgage by the payment of the principal debt without interest, and by order of this court the $4,000 was accepted and the mortgage creditor was paid from the proceeds of the sale. Certain expenditures in connection with the operation of the corporate business by the receiver and allowances to him and his counsel reduced the fund in the receiver's hands for the payment of record costs and claims to $1,367.07.

The agreed statement of facts does not expressly state that Mitchell's Restaurant, Inc. was an employer within the meaning of *Chapter* 258, *Volume* 41 *Laws of Delaware, as amended by Chapter* 280, *Volume* 43 *Laws of Delaware,* but that is the necessary inference from the facts agreed on.

The Delaware Unemployment Compensation Commission filed a claim for unpaid contributions, including penalties, amounting to $1,139.44, to which interest was to be added from specified dates, as follows:

| "For the Periods covering | Amounts of Contributions | Penalties | Interest on Amounts of Contributions |
|---|---|---|---|
| Oct. 1, 1946 to Dec. 31, 1946 | $231.33 | | From Feb. 1, 1947 |
| Jan. 1, 1947 to Mar. 31, 1947 | 252.18 | $5.00 | From May 1, 1947 |
| April 1, 1947 to June 30, 1947 | 115.93 | 5.00 | From Aug. 1, 1947 |
| July 1, 1947 to Sept. 30, 1947 | 270.00 | 5.00 | From Oct. 1, 1947 |
| Oct. 1, 1947 to Dec. 31, 1947 | 250.00 | 5.00 | From Feb. 1, 1948 |
| | $1119.44 | 20.00" | |

The United States filed a claim for unpaid withholding and social security taxes amounting to $2,671.58. Notices

of liens for these taxes were also filed in the Recorder's Office for New Castle County, as follows:

| Date of Filing Notice of Lien | Amount of Assessments | Date Assessment Lists Received by Collector | Taxable Period Ended |
|---|---|---|---|
| May 20, 1947 | $923.28 | May 13, 1947 | Dec. 31, 1946 |
| May 20, 1947 | 203.04 | April 22, 1947 | Dec. 31, 1946 |
| May 20, 1947 | 122.21 | April 24, 1946 | Dec. 31, 1946 |
| June 17, 1947 | 806.01 | June 11, 1947 | March 31, 1947 |
| Dec. 29, 1947 | 617.04 | Sept. 25, 1947 | June 30, 1947 |
|  |  | Oct. 15, 1947 |  |
|  |  | June 13, 1947" |  |

Other claims were filed by general creditors having no preferential rights, but the entire fund in hand, less costs, is applicable either to the claim of the United States or to the claim of the Delaware Unemployment Compensation Commission, and the question is which has priority.

The United States contends (1) that under *U.S. Revised Statutes* § 3466, 31 *U.S.C.A.* § 191, its claim for withholding and social security taxes due from the corporation is preferred in payment to unpaid contributions to the State Unemployment Commission, and (2) that its claim is also a prior lien on the assets of the corporation under *Title* 26 *U.S.C.A.* §§ 3670-3672.

*Section* 3466, 31 *U.S.C.A.* § 191, provides:

"Whenever any person indebted to the United States is insolvent * * * the debts due to United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, * * * as to cases in which an act of bankruptcy is committed."

The priority given the debts of the United States under this section, therefore, applies only in cases of the insolvency of a debtor, and that condition must be manifested in one of the modes mentioned in the statute.

A voluntary or "consent receivership" on the ground

of insolvency is a "voluntary assignment" of the debtor's property within the meaning of *Section* 3466. *Price v. United States*, 269 *U.S.* 492, 46 *S.Ct.* 180, 70 *L.Ed.* 373; *United States v. Butterworth-Judson Co.*, 269 *U.S.* 504, 46 *S.Ct.* 179, 70 *L.Ed.* 380; see also *West Coast Power Co. v. Southern Kans. Gas Co.*, 20 *Del.Ch.* 130, 172 *A.* 414. Furthermore, an act of bankruptcy is committed if a person "(5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property." 11 *U.S.C.A.* § 21, *sub. a*, 52 *Stat.* 844.

Indeed, under the facts of this case, when the receiver was appointed, insolvency in the broad sense could hardly be denied. *Cf. People of State of Illinois ex rel. Gordon v. Campbell*, 329 *U.S.* 362, 67 *S.Ct.* 340, 91 *L.Ed.* 348; *Com. of Massachusetts, et al., v. United States*, 333 *U.S.* 611, 68 *S.Ct.* 747, 92 *L.Ed.* 968.

*Section* 3466 is construed liberally and the word "debts" includes taxes due the United States. *Price v. United States, supra; United States v. Emory*, 314 *U.S.* 423, 62 *S.Ct.* 317, 86 *L.Ed.* 315; *Com. of Massachusetts, et al., v. United States, supra; Churchill v. S. W. Straus Invest. Corp.*, *(D.C.)*, 25 *F.Supp.* 316.

The Unemployment Compensation Statute, § 14, *Chapt.* 258, *Vol.* 41 *Laws of Del., p.* 774, *as amended by* § 20, *Chapt.* 280, *Vol.* 43 *Laws of Del., p.* 1155, provides:

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this State, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceeding, contributions then due or thereafter falling due shall be paid in full prior to all other claims except taxes due the United States or the State of Delaware which by statutory provision are prior liens on the said assets * * *."

In distributing an employer's assets in a receivership, this statute, with certain exceptions, therefore, purports to give prior rights to unpaid contributions due the Commis-

sion, but the priority given the United States by *Section* 3466, though not a lien, cannot be impaired or superseded by state law. *Spokane County v. United States,* 279 *U.S.* 80, 49 *S.Ct.* 321, 73 *L.Ed.* 621; *Illinois v. Campbell, supra; Churchill v. S. W. Straus Invest. Corp., supra; Decker v. Decker Bldg. Material Co.,* 118 *N.J. Eq.* 177, 178 *A.* 196; *West Coast Power Co. v. Southern Kans. Gas Co., supra.* In the latter case, in paying claims against an insolvent corporation in the hands of a receiver, the question was whether income taxes due the United States were entitled to priority over the State's claim for franchise taxes. The Chancellor said [20 *Del.Ch.* 130, 131, 172 *A.* 415] :

> "The provisions of *Article* 6 of the *Constitution of the United States,* which declare *inter alia,* that the laws of the United States which shall be made in pursuance of the Constitution, shall be the supreme law of the land, require that the priority conferred by *Section* 3466 of the *U.S. Revised Statutes,* above quoted, should outrank the preference which is given to the State by *Section* 69 of the *Franchise Tax Law* * * *."

Applying these principles, in the absence of other controlling circumstances, the claim filed by the United States for taxes would be entitled to priority in payment over the claim of the State Unemployment Compensation Commission. The Unemployment Compensation Commission concedes this, with respect to the proceeds of corporate assets not subject to the chattel mortgage at the time of the appointment of the receiver. It claims, however, that applying principles of *Ferris v. Chic-Mint Gum Co.,* 14 *Del. Ch.* 232, 124 *A.* 577, its claim for unpaid contributions has a prior right to that of the United States, with respect to the proceeds of the sale of the mortgaged property. The receiver, pursuant to authority given, sold all the corporate assets in a single lot, and in the absence of some evidence as to the amount received from the mortgaged property, the Commission also claims that the proceeds should be determined by the apportionment based on appraised value and the relation of that value to the total sale price.

As a general rule, by statute taxes due the United States are liens on the property of the taxable from the time the assessment list is received by the collector, though it seems that a demand for payment must be made and a notice of the lien filed in a place which may be prescribed by state statute. *Title* 26 *U.S.C.A.* §§ 3670, 3671, 3672, 53 *Stat.* 448, 449. Pursuant to that power, the Legislature by *Section* 3355 of the *Revised Code* of 1935 provided:

"Notices of liens for taxes payable to the United States of America * * * shall be filed in the office of the Recorder of Deeds of the County or Counties in this State, within which the property subject to such lien is situated."

But, though the notice be filed pursuant to this statutory provision, the tax lien of the United States is not valid "as against any mortgagee, pledgee, or purchaser, of such security, for an adequate and full consideration in money or money's worth, if at the time of such mortgage, pledge, or purchase such mortgagee, pledgee, or purchaser is without notice or knowledge of the existence of such lien." *Title* 26 *U.S.C.A.* § 3672. *Cf. In re Decker's Estate,* 355 *Pa.* 331, 49 *A.2d* 714, *certiorari denied Decker v. Kann,* 331 *U.S.* 807, 67 *S.Ct.* 1190, 91 *L.Ed.* 1828.

The acts of Congress above referred to, largely stem from *United States Revised Statutes,* § 3186, as amended.

The chattel mortgage covering a part of the corporate property was dated November 26, 1946, and it is at least tacitly conceded that it was a duly and promptly recorded lien. The United States' tax liens were filed in the office of the Recorder of Deeds for the county between May 20, 1947, and December 29th of that year, and no assessment was received by the Collector of Internal Revenue until May 13, 1947.

In *Ferris v. Chic-Mint Gum Co., supra,* there was a mortgage lien on corporate real property which came within the exception in 26 *U.S.C.A.* § 3672, and also unpaid state, county and city taxes which, pursuant to state statute,

were conceded to have priority over the mortgage. All of these claims were filed. There was also a claim for unpaid corporate income taxes due the United States. The fund in the hands of the receiver was insufficient to pay both the mortgage and the preceding local tax liens in full. Under the circumstances, the Chancellor held that such tax liens, as well as the mortgage creditor, had prior rights to the claim of the United States. In reaching that conclusion, he said [14 Del.Ch. 232, 240, 124 A. 580] :

"When the government agreed by *Section* 3186 to take rank after the mortgagee, it must necessarily follow that it is subordinate in rank to those who are superior to its immediate senior.

"This conclusion is applicable to the peculiar facts of this case * * *."

See, however, *Spokane County v. United States, supra.*

But that part of the Unemployment Compensation Commission statute, as amended, above quoted, and the agreed facts do not indicate that the unpaid contributions due the Commission were liens on the corporate assets, and *Ferris v. Chic-Mint Gum Co.* is not in point. Furthermore, it is unnecessary to consider whether such claims could have been made valid liens under other provisions of the statute prior to the appointment of the receiver. *Cf. Theisen, Adm'r., v. Hoey, et al.,* 30 *Del. Ch.* 269, 58 *A.* 2d 569.

In the *Ferris* case, the Chancellor also said:

"Because of the fact that the proceeds from the sale of the real estate are insufficient to take care of all liens, it has not been necessary to examine the general question of the relative rights of federal and state governments in asserting their respective claims for taxes."

As we have seen, the Chancellor subsequently discussed that question in *West Coast Power Company v. Southern Kansas Gas Company, supra.*

The United States does not attack the order directing the payment of the principal debt of the chattel mortgage from the proceeds of the sale of the property in bulk. 26

U.S.C.A. § 3672, *supra*. Furthermore, while the procedure was somewhat unusual, there is nothing to indicate that the property covered by the mortgage was worth less than its appraised value.

The fund in the hands of the receiver, less any unpaid costs (*Ferris v. Chic-Mint Gum Co., supra*), is applicable to the claim of the United States.

An order will be entered acordingly.