## THE TRUSTEES OF PUBLIC SCHOOLS

*v.*

### JOHN L. TAYLOR and others.

1. Moneys belonging to the state cannot be taxed by a municipal corporation, and hence the lien of mortgages given by a citizen to the trustees for the support of public schools, or to the chancellor, in his official capacity, cannot be subordinated to the lien of municipal taxes assessed on the mortgaged premises after such mortgages were given, notwithstanding the charter declares that such taxes shall be paramount to every other lien or encumbrance.

2. Provisions in a city charter, inconsistent with amendments to the constitution of the state afterwards adopted, are void.

*Mr. E. L. Campbell,* for exceptants.

*Attorney-General Stockton,* for complainants.

This cause was heard before Barker Gummere, esq., a special master, on exceptions to a master's report.

THE MASTER.

The bill in this cause was filed for the foreclosure of a mortgage upon certain lands in the city of Trenton, executed by John L. Taylor and wife, to the trustees for the support of free schools, to secure a loan of $5,000, with interest, of the moneys belonging to the state school fund, which mortgage is dated April 23d, 1861. The bill states, also, that on April 15th, 1867, Taylor and wife executed another mortgage, on the same premises, to the chancellor of the state of New Jersey, to secure a loan of $5,413.33, with interest, and that The Inhabitants of the City of Trenton claim some interest in the same premises, by virtue of an assessment of taxes thereon, made by said city in 1875, under the provisions of its charter, approved March 19th, 1874, and its supplements, and a sale of the premises for the payment of

Trustees of Public Schools *v.* Taylor.

said taxes pursuant to said charter and supplements and the ordinances of the city, and the purchase of the premises by the city.    The bill states that the complainants have never had notice of the tax sale, and charges that such sale at most vested in the city only the estate of the mortgagor in the premises at the date of said assessment.    The city, by its answer, sets up the assessment of taxes for the year 1875, and avers that, though the premises were struck off to the city at the sale for the payment of said taxes, yet that the sale has never been completed by the execution and delivery of the declaration of sale prescribed by the charter; that the city has therefore a lien only for the amount of taxes assessed in 1875, which lien is redeemable either by the mortgagor or mortgagees, but which lien it claims to be a prior encumbrance upon the mortgaged premises, by force of the provisions of its charter, to both of the above-mentioned mortgages; and the answer further sets up that certain taxes were assessed by the city upon the same premises, under the same charter, in the years 1876 and 1877, and claims a like priority of lien, under said assessments, over said mortgages.

The cause was referred to a master of the court, in due course, who has reported that both the mortgage of the trustees and that of the chancellor are prior encumbrances on the mortgaged lands to the said tax liens, and to this report as to priorities the city has excepted, and claims that the said assessments of taxes for the years 1875, 1876 and 1877 are each and all, by force of the charter of 1874, prior liens on the premises to both of said mortgages.

These liens, and the priorities thereof, are claimed by the city by virtue of sections 55, 58, 59, 60, 61, 66, 71, 72 and 73 of its charter (*P. L.* 1874, p. 331), and section 4 of the supplement (*P. L.* 1874, p. 527); it is clear, I think, that the legislature intended by this charter that all taxes assessed in this city to an owner of a lot in respect of such lot, should be assessed both *in personam* and *in rem;* and, so far as such assessment should be *in rem,* that it should be upon and

include all estates and interests on said lands, whether of the mortgagor, or of the mortgagee, before or after breach of condition, or of any other person; that the lien should be established upon such estates and interests, and that such lien should be prior and paramount to the estate or interest or lien of any person in the land assessed; and it is equally clear, as the state, county and municipal taxes of each year are all to be included in one gross assessment, and are incapable of being separated and distinguished, and, as the city's quota of state and county taxes is to be paid from its general treasury, and not from the collected proceeds of the particular assessments, that the assessments are to be regarded as municipal assessments.

This charter is a special act passed before the adoption of the amendments to the constitution; it confers upon the city invidious and special privileges and powers which are not given to the other municipalities of the state; all mortgages upon lands within the city boundaries are to be assessed there as included in the land, and no deduction on account of such mortgages is allowed, whilst elsewhere in the state a deduction is allowed, and in such case the mortgage interest is to be assessed to the mortgagee; the lien of the assessment made by the city is to be established upon the estate and interest of both the mortgagor and of a mortgagee under a mortgage given before the assessment is made, whilst elsewhere the estate and interest of such prior mortgagee are to be free from the lien of a subsequent assessment. *Morrow* v. *Dows*, 1 *Stew.* 459. In respect both to the subjects of assessment, and to the extent of the lien therefor, important powers and privileges not accorded to other municipalities are, by this special act, conferred upon the city of Trenton. The twelfth paragraph of the constitutional amendments was intended to abolish all such special privileges, and the effect of its adoption on September 28th, 1875, was to repeal from thenceforth the sections of the charter conferring them. *State* v. *Newark*, 10 *Vr.* 380; *Montgomery* v. *Trenton*, 11 *Vr.* 89. As the assessments for

the years 1876 and 1877 were made after the repeal in question, they were made under the provisions of the general laws concerning taxes, and the lien of those assessments is that given by the act of 1863 (*Rev.* p. 1165), that is, a lien upon the estate of John L. Taylor in the mortgaged premises at the dates of the assessments of those years respectively, and subsequent to the lien of the mortgages to the trustees and the chancellor, which mortgages were given before the date of either of those assessments. *Morrow* v. *Dows, supra.*

The assessment of 1875 remains; it was made, and the lien thereof attached, as early as the last Monday in June, 1875 (*P. L.* 1874, p. 527, § 41), by force of the charter, and before the adoption of the constitutional amendments, and is unaffected by the repeal of the sections above mentioned.

The effect of this assessment in respect to the mortgage to the trustees is first to be considered. Although this mortgage was executed to the trustees for the support of free schools, yet they were merely public agents of the state in the transaction, and the mortgage is the property of the state, dedicated by the constitution to the special trusts of education. *State* v. *Trenton*, 11 *Vr.* 89. The first inquiry must be, whether the language of the charter of 1874 was intended to subject the estate, or any interest of the state in lands in Trenton, to assessment for taxes, or to any lien therefor. General terms only are used in the charter; the lien is given " notwithstanding any devise, descent or alienation " of the land, " or any judgment, mortgage or encumbrance thereon " (§ 61 *of Charter*), and the purchaser at a tax sale is to hold the land " against the owner or owners thereof, and all persons claiming under him or them " (§ 73 *of Charter*). It is clear that in both the sections the legislature had in view *persons* only, natural and artificial, as the devisees, alienees, descendants, judgment creditors, and mortgagees, whose property might be assessed, or affected by the lien of an assessment of taxes. The power to assess state property, or to affect its interests by the lien of an

assessment, is too important and anomalous to be evolved by mere construction. Specific words must be required to maintain a claim of so exceptional a power; all general words and phrases in a taxing act must be held to apply only to private persons, and property. *People* v. *Doe*, 36 *Cal.* 220.

In point of fact, it is impossible for the legislature to clothe a municipality with the power of *taxing* state property. Taxation is in its essence an exercise of *sovereign* power over an inferior; it is an *exaction*, payment of which, by the inferior, is compelled by the superior. *Commonwealth* v. *Morrison*, 2 *A. K. Marsh.* 524, 536. The municipality, a mere creature, cannot be vested with any compulsory powers over its creator. If the state permits any part of its property to be taken for municipal purposes, such permission is a voluntary appropriation made by the state, and not taxation by the municipality. To an appropriation of the securities of the school fund, either for general state purposes or for municipal purposes, there is a complete constitutional bar; the fund is expressly dedicated by the constitution to the support of free schools, and the legislature is prohibited by that instrument from borrowing, appropriating or using the fund for any other purpose, under any pretence whatever. *Constitution, Article* 4, § 7, *Subdiv. C.*

It is contended on the part of the city, indeed, that this tax is not levied on state property; that the land only is assessed, and that the mortgage, being mere personalty, and not an estate in land, is not assessed, and that the charter merely postpones the lien of the mortgage to the lien of the assessment. If it be admitted that the mortgage is mere personalty, still no legislative machinery can be construed whereby any security belonging to the school fund can be lawfully impaired. The lien of the mortgage is the constituent element of its value, and as much the property of the school fund as the mortgage itself, and the legislature has no power to waive or postpone such lien in favor of

Trustees of Public Schools *v.* Taylor.

another, except upon full consideration paid. The assumption, however, that the mortgage is a mere personalty, is fallacious—the condition had been broken long before the assessment, and the legal estate was vested in the mortgagees, and such estate was included in the assessment. But, whatever be the qualities of the interest in this land, the state had *some* interest in it for the use of the school fund, and such interest is placed by the constitution beyond the reach of the legislature; however the lien of the school fund mortgage may be affected by the operation of the general principles of law or equity, no lien or priority created by mere legislative authority can prevail over it. The mortgage to the trustees is a lien upon the mortgaged premises prior to the alleged tax lien of the city.

As to the mortgage made to the chancellor, it is admitted that it is not the property of the present or any former incumbent of that office, but is an investment of funds in the custody of the court of chancery of this state, which custody was acquired in the due exercise of its functions. Money in court is money in the possession of the state, acting through its judicial and ministerial officers, and such possession is acquired by the exercise of the sovereign power of the state, under the direction of its courts. The state, through its courts, lays its hands forcibly upon money or upon property, which it converts into money, and not admitting a present right of property or possession in any claimant, holds the legal title thereto in itself, for the benefit of whomsoever it may at a future day determine, through its courts, to be entitled to it, in whole or in part, according to the law of the land. If such a beneficiary be found, the state will vest its legal title in him; if none be found, the title will remain vested in the state. Pending such ascertainments, the fund is the property of the state. The particular securities in question—a bond and mortgage to the chancellor—are the usual badges of legal ownership in the state. If there be any person *in esse* or *in posse* beneficially entitled to the fund secured by them, as to such person the

state has assumed a voluntary trust, without regard to the assent or dissent of the *cestui que trust*, and can impose no other charge upon the fund than the actual cost of the judicial administration thereof, until the beneficiary is ascertained, and the fund paid or appropriated to his use. Until such ascertainment and appropriation, the fund is as well protected by the elemental principles of law from spoliation by taxation, or otherwise, by the legislature, as is the school fund by positive constitutional provision. After a beneficiary is judicially ascertained, *he* may be taxable to the extent of the interest in the fund, the enjoyment of which in possession is awarded him; if his right only has been ascertained and the enjoyment of it is withheld, he is not taxable. But in no case can the court or its ministerial officers be assessed in respect of such fund. If the legislature has any power to appropriate moneys in court to the use of the state, or of its municipalities, it must be by some other machinery than the assessment of taxes upon the courts. Courts, judges and their ministerial officers are not beneficiaries of these funds, and have no assessable interest therein.

If, then, the charter of the city had specifically authorized the bond and mortgage to the chancellor to be assessed, or its lien to be impaired while held by him, such authorization would have been a violation of the principles of constitutional government, and void. But there is no such specific authority, either in this charter or in any law of the state. Courts, judges and their officers are not *persons* contemplated by the tax laws. *Matter of Kellenger*, 9 *Paige* 62. If the legal title to the mortgage in question is in the state, through its chancellor, general words in a tax law will not affect it. *People* v. *Doe, supra.* If there are beneficiaries enjoying any interest in the fund secured by the mortgage, they must be assessed in respect thereof. The condition of this mortgage, also, had been broken before the assessment of 1875; but, as has been before said, whatever was the quality of the mortgagee's interest in the land, it was included in the assessment of the land under the provisions

of the charter, and such assessment was void to that extent.

The chancellor is respectfully advised that the exceptions be overruled.