Charles J. Bowes, as executor under the last will and testament and a codicil thereto of William Bowes, deceased, et al., complainants,

*v.*

United States of America et al., defendants.

[Decided March 1st, 1940.]

*Mr. Raymond J. Lamb,* for the complainants.

*Mr. John J. Quinn,* by *Mr. Hubert Harrington,* for the defendant United States of America.

*Mr. David T. Wilentz* (by *Mr. William A. Moore*), for the defendant State of New Jersey.

*Mr. Otmar J. Pellet,* for the defendant city of Hoboken.

*Messrs. Lichtenstein, Schwartz & Freidenberg,* for the defendants Thomas J. McAleer, J. Harry O'Brien and Julius Lichtenstein.

*Mr. Herman Lipschitz, pro se.*

*Mr. James J. Langan,* for the defendant David A. Newton.

*Mr. William S. Stuhr, pro se.*

EGAN, V. C.

Counsel have submitted a stipulation of facts wherein it appears that the complainant executor's decedent, William Bowes, died on August 17th, 1934, while a resident of the city of Hoboken, in this state. He left a last will and codicil which was duly probated before the Hudson County Orphans Court. The will was contested in that court, and at the conclusion thereof, or subsequently, the court allowed administration fees aggregating $38,500. Complainant executor filed an inheritance tax return in this state, and, also, an estate tax return with the federal government taxing authorities. In each of those returns he set up an administration expense of the estate covering the above allowances of $38,500.

The State of New Jersey assessed an inheritance tax of $15,016. In its calculation of the inheritance tax, the state allowed as a proper deduction the above fees of $38,500 as an administration expense.

The government of the United States of America assessed the estate for federal taxes in the sum of $9,252.49. In its calculation it allowed as a proper deduction the above fees of $38,500 as an administration expense. Also, subsequently, the federal government assessed a deficiency assessment against the estate in the amount of $1,023.46 with interest thereon at $231.79.

The complainant executor and the attorneys, who were awarded administration allowances under the decree of the Orphans Court, entered into a stipulation whereby the attorneys agreed to accept fifty per cent. of their respective claims in full settlement of the sums allowed them.

On May 5th, 1939, this court issued an order directing the complainant executor to collect the rents, issues and profits accruing from the properties owned by the estate for the benefit of the defendants herein, or for such of them as may be determined to have a priority. The complainant executor collected sums of money from various sources as follows:

1. $1,999.77; being rents collected from the estate's realty prior to May 5th, 1939.

2. $4,209.80; being net rents collected from the estate's realty between May 5th, 1939, and October 31st, 1939.

3. $2,481.04; being the net proceeds realized on the sale of premises known as No. 106 Fifth street, Hoboken. Taxes which were owing to the city of Hoboken on this parcel were deducted from the purchase price on July 12th, 1939.

4. $3,599.39; being the net proceeds realized on the sale of premises known as No. 501-503 Bloomfield street, Hoboken. Taxes which were owing to the city of Hoboken on these parcels, were deducted from the purchase price on October 28th, 1939.

5. $500; received from Charles Poggi, upon the execution of a contract to purchase premises known as No. 547-549 Bloomfield street, Hoboken, for $3,300.

Under the terms of the last mentioned Poggi contract to purchase No. 547-549 Bloomfield street, the complainant executor asks leave to sell the property free from liens and to pay the entire net purchase price of $3,000 into this court to be here disposed of upon the determination of these proceedings.

In addition to the cash mentioned in the above numbered paragraphs, the estate holds seventeen parcels of property in the city of Hoboken, New Jersey, all of which are mentioned in the stipulation of facts. There are taxes which became due the city of Hoboken on these parcels after the testator's death, which with interest and penalties, amount to $65,445. Prior to the death of the testator, all liens had been paid.

This suit was instituted under the provisions of the Declaratory Judgment act to obtain a judicial decision as to the priorities, if any, which exist among the various creditors of the estate of William Bowes, and, thereafter, to pay those claims according to the priorities here established.

In the answers filed by the defendants it nowhere appears that the court's jurisdiction in this matter is questioned. It's authority to assume jurisdiction is to be found in the cases of *Coddington* v. *Bispham's Ex'rs, 36 N. J. Eq. 574; Bonnell's Ex'rs,* v. *Bonnell, 47 N. J. Eq. 540; 20 Atl. Rep. 895; Home Brewing Co.* v. *Mahler, 92 N. J. Eq. 323; 112 Atl. Rep. 506; Crane* v. *Doherty, 117 N. J. Eq. 14; 174 Atl. Rep. 886.*

Considering the assets aforesaid: (1) the rents collected by the executor prior to May 5th, 1939 (before this suit was started) amounting to $1,999.77, were in his possession at, and before, the time of the institution of this suit. Originally the devisees under the will of the testator claimed that sum and urged that it should not be available for the payment of creditors' claims. *Joselson* v. *Joselson, 116 N. J. Eq. 180; 172 Atl. Rep. 812.* But, subsequently, counsel, in their behalf, stated that they waive all claim to that fund and consent that it be applied in the same manner as the rents collected by the complainant executor may be applied.

(2) The rents collected during the pendency of this action: This court by order dated July 12th, 1939, denied the application of the city of Hoboken to appoint a receiver to collect rents from the testator's real estate under the "Stout act." It appointed and directed the complainant executor to collect them. The rents so collected, I am satisfied, should be available for the payment of the creditors of the estate. In *Coddington* v. *Bispham's Ex'rs, supra,* Mr. Justice Depue, speaking for the Court of Errors and Appeals (at *p. 579*) said:

"The lands whereof the testator died seized being assets for the payment of debts, and the court having taken charge of all the assets, real and personal, for the purpose of administration, rents realized while the lands were in the custody of the court in the process of administration are assets for the payment of debts equally with the lands themselves.

"The legatees contend that the creditors should have been remitted to other assets in the hands of the executors. But the legatees suffered their suit to rest with a decree for an accounting, and it is undetermined whether anything shall be found due from the executors, and whether they have the ability to pay. As between creditors, who are entitled to be paid first, and legatees, who take only the surplus after debts are paid, the equity is wholly in favor of the former, to have the assets in hand applied in satisfaction of their demands."

(3) The proceeds of the sales of real estate in the city of Hoboken (upon which the taxes have been paid) are claimed by the following: (a) The United States of America; (b)

The State of New Jersey, and (c) administration expense creditors.

I believe that the parcel of real estate located at No. 547-549 Bloomfield street, Hoboken, contracted to be sold free and clear of liens does not, because of the agreement to sell, lose its character as real estate.

The funeral and administration expenses should be paid before other creditors of the estate are paid. My conclusion results not only from the rule at common law, but also from the adjudications of this and other courts. See *Haines* v. *Price, 20 N. J. Law 480*. The *Haines Case* is one of the first decisions on the subject in this state. The ruling there was followed in *Second National Bank* v. *Blauvell, 44 N. J. Eq. 173; 14 Atl. Rep. 618*, and Vice-Ordinary Van Fleet, among other things, there said:

"The order of payment prescribed by the common law was, first, funeral charges and the expenses of administration; second, debts of record; third, debts by specialty; and, fourth, simple contract debts. *Haines* v. *Price, Spen. 480; Grif. Reg. 1281, note.*"

*Seidler* v. *Branford Restaurant, 97 N. J. Eq. 531; 128 Atl. Rep. 166*. In the case of *Bliss* v. *Linden Cemetery Association, 90 N. J. Eq. 404; 107 Atl. Rep. 594*, Vice-Chancellor Backes in discussing the rule said:

"The rule is thoroughly settled that when a court of equity takes possession of property for the purpose of protecting and preserving it for the benefit of the parties interested, the costs of administration are entitled to priority of payment, regardless of the nature of the liens and claims thereon of the litigants. This is so fundamental to the administration of justice and so generally recognized that citation of authority is unnecessary."

*Fitz Randolph* v. *Fitz Randolph, 121 N. J. Eq. 380; 189 Atl. Rep. 923*. In the last cited case the executors claimed a priority to the fund paid into court and one of the decedent's general creditors objected to this priority. Vice-Chancellor Buchanan there held that the executors were entitled to prior payment. He, among other things, said:

"The payment of administration expenses is not specified in section 66 as entitled to priority; but this by no means warrants a conclusion that such expenses are not entitled to priority,—especially when it is observed that the statutory direction as to the payment and distribution of these assets makes the provisions in sections 95 and 110 above mentioned, for payment of these expenses. The justifiable conclusion is that the legislature assumed that naturally such expenses must and would be paid first. That conclusion is strengthened by the fact that a considerable research discloses no reported case in this state in which a contrary view has ever heretofore been asserted by any creditor, general or preferred.

"At common law these expenses were entitled to preference in payment over the debts due to creditors. *24 C. J. 423.* In *Haines* v. *Price, 20 N. J. Law 480,* at *484,* the supreme court says that to the preferred debts named in the statute there should be added 'doubtless by construction of law, the expenses of administration, which would be allowed first after payment of funeral expenses.' (Funeral expense is deemed a first and paramount charge on the decedent's estate for obvious reasons of public policy. *Sullivan* v. *Horner, 41 N. J. Eq. 299; 7 Atl. Rep. 411.*)"

In *2 Williams on Executors (6th Am. Ed.) 1055,* the author states the rule to be as follows:

"Before any debt or duty whatsoever, funeral expenses, with the proper limitation as to the amount, are, as it has already appeared, (a) to be allowed out of the estate of the deceased. These expenses are to be preferred, even to a debt due to the crown. (b.)

"The next thing to justify and occasion expense is the proving of the will or taking out administration; (c) but a greater disbursement, says the author of the Office of an Executor, (d) will not stand allowable, than is prescribed by the statute of *21 Hen. 8 c. 5* (e).

"The costs of a suit in equity are to be considered as expenses in administering the estate, and are the first charge upon an estate, whether administered in or out of court. (f.)"

The *Revised Statutes of 1937, 3:25-2,* provide:

"Certain claims preferred. Judgments entered against the decedent in his lifetime, funeral charges and expenses, and the physicians' and nurses' bills during the last sickness shall have preference and be first paid out of the personal and real estate of the decedent."

That provision of the statute restates the common law rule and in no way affects the common law preference for administration expenses.

The claim of the United States of America to priority seems to be based upon two statutes. The first, now found in *U. S. C. A. title 26 § 427*, creates a lien in favor of the United States of America upon the gross estate. It provides:

"(a) Upon gross estate. Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien. If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may, under regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed. (Feb. 26, 1926, c. 27, Sec. 315 (a), *44 Stat. 80;* May 29, 1928, c. 852, Sec. 613 (b), *45 Stat. 876;* June 6, 1932, c. 209, Sec. 809, *47 Stat. 283*)."

And also in *U. S. C. A. title 31 §§ 191* and *192*, which provide:

"Section 191. Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. (*R. S. sec. 3466.*)

"Section 192. Liability of fiduciaries. Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid. (*R. S. sec 3467.*)"

The first United States statute, *U. S. C. A. title 26 § 427*, creates a general lien upon the gross estate, but makes no provision for priority. It does not, in my opinion, apply to such part of the estate as is used for the payment of charges

against the estate and expenses of its administration. The United States statute, *U. S. C. A. title 31* §§ *191* and *192,* appears to give a priority in certain situations.

In *United States* v. *Oklahoma, 261 U. S. 253; 67 L. Ed. 638; 43 Sup. Ct. 295,* the United States Supreme Court limited the application of sections 191 and 192 to situations where there was insolvency, plus evidence of an overt act in the nature of a voluntary assignment or an attachment of the assets of an absconding, concealing or absent debtor, or some other act of bankruptcy.

In the present situation we are not confronted with the question of insolvency, nor of an overt act that is required by sections 191 and 192, *supra;* the stipulation herein is silent as to the estate's solvency or insolvency. See *Kennebec Box Co.* v. *O. S. Richards Corp., 5 Fed. Rep. (2d) 951.* In *Hammond* v. *Carthage Sulphite Pulp and Paper Co., 34 Fed. Rep. (2d) 155,* the court held taxes due the federal government have priority over all other claims excepting administration expenses. In *Wire Wheel Corp.* v. *Fayette Bank and Trust Company of Connersville, Ind., 30 Fed. Rep. (2d) 318,* the court said:

"The tax became due at the time fixed by the statute for filing the return. Section 5632 (e), *Barnes' Code Supp. 1919-1926 (26 U. S. C. A.* § *885).* The receiver therefore became indebted to the United States within the provision of section 3466, *R. S. (31 U. S. C. A.* § *191)* when he made his monthly reports. *Price* v. *U. S., supra.* 'The word "debts" as used in *R. S. 3466* includes taxes.' * * *

"Respecting the county tax, we are likewise convinced that it was the intention of the court to direct (and the order so provided) that the receiver's certificates should be subject to the 'receivership costs and expenses;' that among the receivership costs and expenses were such items as receiver's fees, attorney's fees, court expenses, and taxes (local as well as federal)."

The court also held that the receiver's and attorney's fees came ahead of all other liabilities including federal taxes, dismissing this point with the statement: "No question is presented as to the amount or priority of the attorney's fees."

The State of New Jersey in its argument takes the position that taxes are not debts within the meaning of the foregoing sections of the federal statutes. The United States Supreme Court differs with it in its opinion in *Price* v. *United States, 269 U. S. 492; 70 L. Ed. 373; 46 Sup. Ct. 180*. Mr. Justice Butler, in speaking for the court, said (at *p. 499*) :

"The word 'debts' as used in *R. S.* § *3466* includes taxes.

"The claim of the United States does not rest upon any sovereign prerogative; but the priority statutes were enacted to advance the same public policy which governs in the cases of royal prerogative; that is, to secure adequate public revenue to sustain the public burdens. *United States* v. *The State Bank of North Carolina, 6 Pet. 29, 35*. And to that end, section 3466 is to be construed liberally. Its purpose is not to be defeated by unnecessarily restricting the application of the word 'debts' within a narrow or technical meaning. *Cf. Miller* v. *Robertson, 266 U. S. 243, 248*. The meaning properly to be attributed to that word depends upon the connection in which it is used in the particular statute and the purpose to be accomplished."

In *Freeholders of Middlesex County* v. *State Bank at New Brunswick, 29 N. J. Eq. 268; affirmed, 30 N. J. Eq. 311*, it was held that the State of New Jersey does not possess the Crown's common law prerogative to have debts due it paid before debts due other creditors. From that expression it follows that any priority in favor of the State of New Jersey must be such as is created by statute. The lien of the State of New Jersey is effected by section 54:35-5 of the Revised Statutes of 1937, which provides:

"Tax a lien until payment or bond furnished. Taxes levied and assessed under chapters 33 to 36 of this title (sec. 54:33-1 *et seq.*) shall be and remain a lien on all property owned by the decedent as of the date of his death until paid or secured by bond as provided by said chapters 33 to 36. Source, L. 1909, c. 228, sec. 5, p. 329 (*C. S. p. 5305, sec. 541*), as am. by L. 1915, c. 331, sec. 1, p. 604, L. 1918, c. 282, sec. 3, p. 1077, L. 1922, c. 174, sec. 2, p. 297 (1924 Suppl. secs. 208-541), L. 1931, c. 303, sec. 3, p. 757."

This statute differs from the statute giving the federal government a lien, only in that the state's lien extends to all of the property which decedent owned at the time of his death; while the lien of the United States extends only to such property as is not used in paying charges and expenses of administration.

The state claims priority under the provisions of section 54:49-1 of the Revised Statutes of 1937, which says:

"Tax a debt and lien; preference; proceeds paid to commissioner. The taxes, fees, interest and penalties imposed by any such state tax law, or by this subtitle, from the time the same shall be due, shall be a personal debt of the taxpayer to the state, recoverable in any court of competent jurisdiction in an action in debt in the name of the state. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and shall have preference in any distribution of the assets of the taxpayer, whether in bankruptcy, insolvency or otherwise. The proceeds of any judgment or order obtained hereunder shall be paid to the commissioner. Source, L. 1936, c. 263, sec. 302, p. 808."

This statute originally was chapter 263 of the laws of 1936, and took effect on July 1st of that year. William Bowes died on August 17th, 1934, almost two years before the enactment of that statute. Priority herein vested upon the decedent's death. It certainly could not be imposed by legislative enactment subsequent thereto. The Tax act of New Jersey is general in its application and applies to all taxes levied and assessed by the state. The state inheritance taxes are levied against the devisees and legaties under a decedent's will, or against the decedent's heirs and next of kin. The estate is not the taxpayer. The state inheritance taxes are derived from its power under the provisions of section 54:35-5, *supra.* However, the state since it has not been given priority by statute, is not entitled to be paid before the administration creditors.

The city of Hoboken makes claim to a priority under the following sections of the Revised Statutes of 1937:

"54:5-6. Unpaid taxes a lien; penalties and costs. All unpaid taxes on lands, with interest, penalties, and costs of collection shall be a lien on the land on which they are assessed on and after Decem-

ber first of the year in which they fall due. Source, L. 1918, c. 237, sec. 6, p. 883 (1924 Suppl. sec. 208-444a (6))."

"54:5-9. Municipal liens paramount. Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens. Source, L. 1918, c. 237, sec. 9, p. 884 (1924 Suppl. sec. 208-444a (9))."

The city of Hoboken sold the property for taxes in arrears and acquired the tax lien certificate at the tax sale. It now contends its title cannot be collaterally attacked in the instant case. Its title is not being attacked here. It has a valid lien, which was acquired several years after the government of the United States and the State of New Jersey acquired their liens. The city's liens resulted from the non-payment of taxes which were assessed and became due, after the testator's death. See *Berry-Shilling, Inc.,* v. *Shuster, 122 N. J. Eq. 256; 193 Atl. Rep. 919.* The lien of the city of Hoboken, in my opinion, is subject to the lien of the United States of America and to the lien of the State of New Jersey.

In *Decker* v. *Decker Building Material Co., 118 N. J. Eq. 177; 178 Atl. Rep. 196,* the United States and the town of Irvington each claimed a priority to funds in the hands of a receiver of the defendant corporation. The claims were based upon taxes. Vice-Chancellor Berry decreed a preference in favor of the United States. In his opinion he said (at *p. 180*):

"There is no longer any doubt as to the power of the congress to give priority to debts due to the United States, though the debts thereby subordinated are due to a state or one of its subdivisions. When the several states granted to the federal government the power to levy taxes, they surrendered any right to maintain that their taxes should be equal or paramount to those of the federal government in the face of legislation by congress to the contrary. *Exchange National Bank* v. *United States, 147 Wash. 176; 62 A. L. R. 139.*"

In *Lane Co.* v. *Oregon, 7 Wallace 71; 74 U. S. 101 (1868),* the United States Supreme Court discussed the respective rights of the United States of America, and the separate states thereof, and said (at *p. 104*):

"The constitution, it is true, greatly changed this condition of things. It gave the power to tax, both directly and indirectly, to the national government, and subject to the one prohibition of any tax upon exports and to the conditions of uniformity in respect to indirect, and of proportion in respect to direct taxes, the power was given without any express reservation. On the other hand, no power to tax exports or imports, except for a single purpose and to an insignificant extent, or to lay any duty on tonnage, was permitted to the states. In respect, however, to property, business and persons, within their respective limits, their power of taxation remained and remains entire. It is, indeed, a concurrent power, and in the case of a tax on the same subject by both governments, the claim of the United States, as the supreme authority, must be preferred; but with this qualification it is absolute. The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the states commit the exercise of the power."

In *Philadelphia Dairy Products Co., Inc.,* v. *Summit Sweets Shoppe, Inc., 113 N. J. Eq. 458; 167 Atl. Rep. 667,* the court, among other things, said:

"* * * The well established rule is to pay first the general expenses of the receivership and then the allowed claims in the order of their priority. *Albert & Kernahan, Inc.,* v. *Franklin Arms, Inc., 107 N. J. Eq. 468; Walser* v. *Northern Valley Building Corp., 109 N. J. Eq. 126; Spark* v. *LaReine Hotel Corp., 112 N. J. Eq. 398;* sections 85 and 86 of the General Corporation act; *2 Comp. Stat. p. 1652.*"

I am satisfied that the rents collected during the pendency of this suit should be treated as real property. *Coddington* v. *Bispham's Ex'rs, supra.* It may be observed that the statute permitting municipalities to retain rent receivers for properties which are in arrears for taxes is not mandatory. While it gives the court power to appoint a receiver in instances where no right existed prior to its passage, it did not take away the ancient and inherent right of the court to exercise discretion in the appointment of a

receiver. It may also be stated that the statute does not give a municipality a lien against the rents in those instances where its application for the appointment of a receiver is refused.

I conclude that the said claims shall be paid in the following order of priority:

1. The administration expense creditors;
2. The United States of America;
3. The State of New Jersey;
4. The city of Hoboken; and
5. The general creditors.