634 A.2d 1378

UNION COUNTY UTILITIES AUTHORITY, PLAINTIFF, v. PAUL JOSEWITCH, 1429 ROUTE 1 CORPORATION, SBP INDUSTRIES, CARTERET BANK AND TRUST COMPANY, PEOPLES BANK, THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE CITY OF RAHWAY, AND STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF TAXATION, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided June 18, 1993.[1]

---

[1] This is an amplification of an oral bench decision.

*Donald Parisi,* for defendant City of Rahway (*Donington, Karcher, Leroe, Salmond, Luongo & Ronan,* attorneys).

*Stanley S. Makarevic,* Deputy Attorney General, for defendant State of New Jersey, Department of the Treasury, Division of Taxation (Fred DeVesa, Acting Attorney General, attorney).

BEGLIN, A.J.S.C.

This is a condemnation action in which plaintiff deposited $120,-000.00 with the Clerk of the Superior Court pursuant to its

Declaration of Taking under the Eminent Domain Act of 1971 and supporting appraisal. *N.J.S.A.* 20:3–18; *R.* 4:73–9. All parties including the property owner have been served, but only the City of Rahway ("City") and State of New Jersey ("State") have filed answers. Neither of these defendants contests the asserted value of the property or the plaintiff's appraisal of the property. By cross motions, however, each seeks the amount on deposit based upon the priority of their respective liens for unpaid taxes.

The real estate taxes assessed by the City upon the property subject to condemnation have not been paid since 1986. In 1990, the City purchased the certificate for unpaid 1987, 1988 and 1989 taxes. The total amount now due, including the first half of 1993, and interest, well exceeds the value of the property and the $120,000 sum on deposit. In any event, the amount claimed due under the tax sale certificate, with interest to July 1, 1993, is $108,893.08, and the City asserts entitlement to at least that amount. Rahway bases its claim upon the provisions of the Tax Sale Law, *N.J.S.A.* 54:5–1 to –129, specifically:

*N.J.S.A.* 54:5–6. **Unpaid taxes a lien; penalties and costs**

Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of the fiscal year of the municipality for which the taxes are assessed, and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien.

*N.J.S.A.* 54:5–9. **Municipal liens paramount**

Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens.

The State claims unpaid taxes due from the property owner under the N.J. Gross Income Tax Act (*N.J.S.A.* 54A:1–1 to 10–12) and specifically the provisions thereof imposed upon an employer to withhold such taxes from the wages paid to employees, 54A:7–4 & –5; and under the N.J. Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29. The State's claim to the condemnation proceeds is asserted under the State Tax Uniform Procedure Law, which provides:

*N.J.S.A.* 54:49–1. **Tax a debt and lien; preference; proceeds paid to commissioner**

The taxes, fees, interest and penalties imposed by any such State tax law, or by this subtitle, from the time the same shall be due, shall be a personal debt of the taxpayer to the State, recoverable in any court of competent jurisdiction in an action in debt in the name of the State. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and except as may be provided to the contrary in any other law, and shall have preference in any distribution of the assets of the taxpayer, whether in bankruptcy, insolvency or otherwise. The proceeds of any judgment or order obtained hereunder shall be paid to the commissioner.

The State alleges that the property owner owes unpaid sales taxes from the first quarter of 1986 thru the third quarter of 1992 totaling $48,746.48, and unpaid withheld income taxes from the first quarter of 1988 thru the reconciliation return for the year 1990 totaling $21,050.24, to which should be added statutory interest, penalties and costs of collection. As of May 28, 1993, the State is asserting outstanding balances on the sales tax liability thru the first quarter of 1988 of $25,443.47 and on employer-withholding of income taxes thru the third quarter of 1989 of $13,047.15, which sums include all interest, penalties and collection costs.

The State, then, asserts that its lien has "preference" and the City claims its lien is "first and paramount." The priority of each against the other rests upon those statutory provisions which create the underlying liens. When the lien claims are on equal footing, the State generally will prevail. For that reason, the State's lien for unpaid 1930 franchise taxes was found to have priority over a municipality's lien for unpaid 1930 personal property taxes, each by statute being a preferred claim in an insolvency proceeding. "[T]he tax claim of a political subdivision of the state cannot be superior to the claim of the state itself." *Spark v. La Reine Hotel Corp.*, 112 *N.J.Eq.* 398, 404, 164 *A.* 589 (Chan. 1933).

However, when the claims of the competing governmental entities do not have such equality, case law indicates two principles take effect. First, "[u]nder *N.J.S.A.* 54:5–9, the municipality generally has a priority lien over all prior and any subsequent State encumbrances." *N.J.S.A.* 58:10–23.11f(f); *Kessler v. Tarrats*, 194 *N.J.Super.* 136, 143, 476 *A.2d* 326 (App.Div.1984). Sec-

ond, the Legislature may establish that the state lien in certain circumstances is nevertheless to be superior. The priority enjoyed by the municipality, in other words, may be subject to the lien of the State authorized by a particular legislative enactment. For that reason, the retroactive application of the Spill Act has given the lien created by that Act paramount status to a municipality's lien for unpaid real estate taxes. *Ibid.* Otherwise, the inquiry must focus on when each particular lien is created or attaches.

In *Berry–Shilling, Inc. v. Shuster,* 122 *N.J.Eq.* 256, 193 *A.* 919 (Chan. 1937), property was sold to the State Tax Commissioner under a writ of execution based upon unpaid state inheritance taxes. The municipality claimed that the State took subject to its lien for unpaid taxes. Under the Transfer Inheritance Tax Act (*L.*1909, *c.* 228, as amended by *L.*1922, *c.* 174, § 5), the lien of the State attached as of the date of the decedent's death. The Court held that despite the provisions of *L.*1918, *c.* 237, § 9 (now *N.J.S.A.* 54:5–9) the State's lien was paramount to the municipality's lien for real estate taxes assessed subsequent to the decedent's death. "Had the Legislature intended to subordinate state tax liens to subsequent municipal tax liens, that intention would have been expressed in clear and unequivocal language. But it is not." *Id.* at 259, 193 *A.* 919.

*Irvington v. Ollemar,* 128 *N.J.Eq.* 402, 16 *A.*2d 563 (Chan. 1940), involved the lien asserted by the State for unpaid transfer inheritance taxes and the municipality's lien for unpaid local improvements which had attached to the property prior to the decedent's death as well as other municipal liens which attached after her death. The court held:

> [U]nless the rule has been changed by statute, the municipal lien which arose prior to her death is the first lien, second is the lien of the state for inheritance tax, and third are the municipal liens which accrued subsequent to death. [*Id.* at 409, 16 *A.*2d 563.]

The general wording of *N.J.S.A.* 54:5–9 making the municipal lien "paramount" does not operate to subordinate a *prior* lien held by the state under *N.J.S.A.* 54:49–1 on a preference basis. The

priority of such liens is to be determined by the dates on which each attached to the property. In such circumstances, the general rule (absent retroactive status) is "first in time, first in rank." *Irvington v. Ollemar, supra,* 128 *N.J.Eq.* at 408, 16 *A.*2d 563.

Turning to the facts of this case, the focus must be upon when each party's asserted lien attached to the lands subject to condemnation. Under *N.J.S.A.* 54:5–6, the City's lien attached to the property on the first day of January of each year for which the taxes were assessed. (The 1991 amendment changing the date to the first day of the municipality's fiscal year is not significant in this instance.) On January 1, 1987, then, the City's lien for 1987 taxes "fastened" to the property. That 1987 tax lien is first and paramount to all prior or subsequent encumbrances save prior preference liens of the State.

On January 1, 1987, this property was already subject to liens for unpaid sales taxes and employer-withheld income taxes. Sales and income taxes are debts of the taxpayer and that debt becomes a lien on the taxpayer's property from the time the tax becomes due. *N.J.S.A.* 54:49–1. Under the N.J. Gross Income Tax Act, the tax withheld becomes due at the time the employer is required to file the necessary return (generally by the fifteenth day of the following month). *N.J.S.A.* 54A:7–4. Under the N.J. Sales and Use Tax Act, generally the tax collected becomes due and is to be paid to the State monthly (by the twenty-eighth day of the following month). *N.J.S.A.* 54:32B–17 & 18.

On December 31, 1986, this property had therefore become subject to the liens of the State for then due but unpaid sales and employer-withheld income taxes. These liens have preference to the lien of the City for unpaid 1987 taxes which attached the next day. That lien of the City, however, maintains paramount status as to any State liens subsequently attaching during 1987.

The same procedure is to be followed for 1988 and each ensuing year. Liens of the State for unpaid sales and employer-withheld income taxes attached during the year as they became due, that is, as each respective return was required to be filed and the requi-

site accompanying tax payment made. The property was subject to the liens for all such unpaid taxes as of December 31, 1987. When the City's lien for unpaid 1988 real estate taxes attached on January 1, 1988, that lien could not be paramount to the State's liens to which the property had become subject during 1987. Again, on January 1, 1989, the City's lien was subject to the liens of the State for due and unpaid taxes which had attached to the property during 1988. In each instance, the State's liens include penalties, interest and the fee imposed for the cost of collection. *N.J.S.A.* 54:49–10.

The parties have agreed that using the above formula the State is entitled to claim $38,491.32 due it for unpaid taxes on a preference basis under *N.J.S.A.* 54:49–1. The State's cross motion is therefore granted to that extent and the Clerk of the Superior Court will be directed to remit that amount to the State from the funds on deposit. The City having demonstrated its entitlement to the balance under *N.J.S.A.* 54:5–6 & 9, its motion is accordingly granted and the Clerk will be ordered to pay the balance of the deposit including all interest accruing thereon to the City.